IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

    v.                                                  Criminal No. 4:20cr18 (DJN)

WILLIAM WELLINGTON HOOPER, JR.,
    Defendant.

**MEMORANDUM OPINION**

On September 18, 2020, after considering all of the evidence presented during trial, a jury found Defendant William Wellington Hooper, Jr. ("Hooper" or "Defendant") guilty on four counts related to the production of child pornography, including two counts of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b). Defendant now asks the Court to overturn the verdict that the jury reached after considering all of the evidence presented during trial. This matter comes before the Court on Defendant's Motion Pursuant to Rule 29 of the Federal Rules of Criminal Procedure (the "Motion" (ECF No. 109)), in which Defendant moves the Court to set aside the jury's guilty verdict on all four counts. For the reasons set forth below, the Court DENIES Defendant's Motion.

### I.    BACKGROUND

#### A.    Indictment and Trial

On May 5, 2019, a grand jury returned a superseding indictment (the "Indictment" (ECF No. 7) against Defendant, charging him with four offenses related to his conspiring with Jennifer Hutchens ("Hutchens") to obtain sexually explicit photographs of Jane Doe 1 and Jane Doe 2, both minors. Specifically, in Count One, the Indictment charged Defendant with Conspiracy to Produce Child Pornography, in violation of 18 U.S.C. § 2251(e) and (a). (Indictment at 2-7.)

Count Two charged Defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), and Counts Three and Four charged Defendant with Coercion and Enticement to Produce Child Pornography, in violation of 18 U.S.C. § 2422(a). (Indictment at 8-9.)

The Court held a jury trial beginning on September 14, 2020. The jury heard testimony from Jane Doe 1 about how her mother, Hutchens, introduced her to Defendant in April 2019, when Jane Doe 1 was fifteen years old. Jane Doe 1 testified that she corresponded with Defendant via both SMS text messages and TextNow text messages. The Government introduced the conversations between Jane Doe 1 and Defendant into evidence. (Gov't Exs. 1a, 2a.) In those messages, Defendant discussed taking sexually explicit photographs of Jane Doe 1, including of her engaged in sexual activity with Defendant. He claimed that she could make a lot of money taking these types of photographs. He also instructed her to buy certain underwear. Additionally, Defendant asked Jane Doe 1 about getting her friend, Jane Doe 2, involved in taking sexually explicit photographs.

In addition to conversing about the sexually explicit photographs, Defendant took pictures of Jane Doe 1. On April 18, 2019, Jane Doe 1 visited Defendant on his boat. Defendant took photographs of Jane Doe 1's exposed genitals before initiating sexual intercourse with her. After Jane Doe 1 left, Defendant gave Hutchens $50 to pay Jane Doe 1.

On May 5, 2019, Jane Doe 1 used her mother's cell phone to converse via text messages with Defendant. (Gov't Ex. 2a.) During the conversation, Defendant offered to pay her for additional sexually explicit photographs. Defendant described in graphic detail the pictures that he wanted to take, including pictures of the two of them engaged in sex acts.

The Government also elicited testimony from Hutchens. She testified that she had a dominant-submissive relationship with Defendant. As part of this relationship, Defendant asked

2

Hutchens to take sexually explicit photographs of Jane Doe 1 and other minors. The Government introduced SMS and TextNow text messages as well as email messages between Defendant and Hutchens. (Gov't Exs. 2a, 2b, 9-13.) These text messages show Defendant requesting that Hutchens induce Jane Doe 1 and Jane Doe 2 to take sexually explicit pictures. Defendant also discussed the possibility of recruiting additional young girls to be photographed, including girls as young as twelve. Jane Doe 2 also testified to the conversations that she had with Defendant and the pictures that Hutchens took of her at Defendant's request. Jane Doe 2 was fifteen years old at the time. Additionally, Special Agent Jason Brumbelow of Homeland Security Investigations testified as to the phones that Defendant used during the relevant time period and the phone records related to those phones.

The Government further elicited testimony from two other women, S.M. and G.T., who had met Defendant several years ago as minors. Defendant had also requested sexually explicit photographs of them under the guise of a teen modeling business. The methods that he used to induce S.M. and G.T. closely resembled the methods used to induce Jane Doe 1 and Jane Doe 2 to take explicit photographs.

Defendant called three witnesses. He called his housekeeper, Amber Grenell, who testified that Hutchens had worked as a housekeeper at Defendant's home and that Hutchens had access to Defendant's phones and computers. Defendant also called Lori Seman, a forensic analyst with the Virginia Division of Forensic Science. Seman testified that a forensic analysis of the blanket seized from Defendant's boat did not contain Jane Doe 1's DNA. Finally, Defendant took the stand on his own behalf. He testified that he had no involvement in any of the allegations. He claimed that someone else must have sent the text messages and emails at issue.

On September 18, 2020, the Court charged the jury with its instructions and the parties made their closing arguments. After deliberating for less than ninety minutes, the jury found Defendant guilty on all four counts.

**B.     Defendant's Motion**

On November 2, 2020, Defendant filed the instant Motion. Defendant argues that Count Four encompasses Count Three, making them multiplicitous. (Def.'s Mot. at 8-11.) According to Defendant, the Double Jeopardy Clause bars his conviction on both counts, because the two counts charge Defendant twice for the same conduct. (Def.'s Mot at 10.) Additionally, Defendant argues that insufficient evidence supports a guilty verdict on any of the four counts. (Def.'s Mot. at 11-13.) In support, Defendant argues that the jury should have believed his testimony over the testimony of Jane Doe 1 and Hutchens. (Def.'s Mot. at 12-13.)

On November 17, 2020, the Government filed its Response to Defendant's Motion Pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Gov't Resp." (ECF No. 110).) On December 1, 2020, Defendant filed his Reply to Government's Response to the Defendant's Motion Pursuant to Rule 29 of the Federal Rules of Criminal Procedure. ("Def.'s Reply" (ECF No. 111).) This matter is now ripe for review.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Upon such motion, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In deciding whether to set aside a guilty verdict, the Court must consider "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to

the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). Accordingly, "[a] guilty verdict should be upheld if it is supported by substantial and competent evidence." *United States v. Whyte*, 2018 WL 521593, at *3 (W.D. Va. Jan. 23, 2018) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

In deciding whether substantial and competent evidence exists, the Court should not decide whether the evidence convinces it beyond a reasonable doubt of the defendant's guilt, only whether evidence exists "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). Importantly, the Court may not weigh the evidence, draw inferences from the facts, resolve evidentiary conflicts or assess the credibility of witnesses, for such functions fall within the province of the jury. *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983). "Further, 'if the evidence supports different, reasonable interpretations, the jury decides the interpretation to believe.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)). Deference to the jury requires the Court to "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995). Ultimately, a defendant challenging the sufficiency of the evidence supporting his conviction "must overcome a heavy burden." *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995).

### III. ANALYSIS

Defendant advances two distinct grounds for the Court to overturn his convictions. The Court will first address his argument that the Court should strike Count Three as multiplicitous of Count Four, in violation of the Double Jeopardy Clause. The Court will then turn to his argument that sufficient evidence did not support his convictions on any counts.

**A.  Double Jeopardy**

Defendant argues that the Court should strike Count Three, because Count Four subsumes it. (Def.'s Mot. at 7-11.) Specifically, Defendant argues that the two counts constitute the same offenses in law and fact, because the date range in Count 4 includes the specific date charged in Count Three. (Def.'s Mot. at 10-11.) The Government first challenges the timeliness of Defendant's Motion, arguing that Defendant has waived his right to challenge the Indictment by not bringing the challenge in a pretrial motion. (Gov't Resp. at 6-7.) Additionally, the Government claims that the challenge lacks merit, because the offenses charged differ in both law and fact. (Gov't Resp. at 7-10.)

With respect to the timeliness argument, Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) provides that a motion raising the defense that the indictment defectively "charg[es] the same offense in more than one count (multiplicity)" must be raised before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(ii). The Fourth Circuit has noted that failing to raise such an argument by pretrial motion renders it untimely. *United States v. Fall*, 955 F.3d 363, 373 (4th Cir. 2020). However, the Fourth Circuit expressly declined to "weigh in on" whether "the claim is altogether waived" when not raised in a pretrial motion. *Id.* (recognizing a

6

circuit split on question). The Fourth Circuit declined to answer the question, because the defendant's multiplicity challenge failed for lack of merit. *Id.*

Here, similarly, the Court need not address the timeliness question, because Defendant's Double Jeopardy challenge lacks merit. The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall . . . be subject to the same offence to be twice put in jeopardy of life or limb . . ." U.S. Const. amend. V. This guarantee not only protects criminal defendants from successive prosecutions for the same offense, but also from multiple punishments. *United States v. Dixon*, 509 U.S. 688, 696 (1993). Thus, the Government cannot subject a person to "multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). "This prohibition attaches if the subject offenses are in law and in fact the same offense." *United States v. Schnittker*, 807 F.3d 77, 82 (4th Cir. 2015).

Courts take an objective approach to determine whether multiple counts cover the same offense. *See id.* (applying objective test to determine whether count that the defendant pled guilty to constituted same offense as offense later charged). In doing so, courts consider the "entire record of the proceedings," not just the language in the indictment. *Id.* Convictions that involve different conduct on different dates fall outside of the scope of the ban on multiplicitous prosecutions. *Fall*, 955 F.3d at 373.

Here, the Indictment does not suffer from multiplicity. Count Three charges Defendant as follows:

> On or about May 5, 2019, in the Eastern District of Virginia, defendant WILLIAM WELLINGTON HOOPER, JR., using a facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce Jane Doe 1, an individual who has not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, to wit, Production of Child Pornography, in violation of Title 18, U.S.C. Section 2251. (In violation of Title 18, United States Code, Section 2422(b).).

(Indictment at 8.)

7

Count Four then charges Defendant as follows:

> On or about April 1, 2019 to on or about May 31, 2019, in the Eastern District of Virginia, defendant WILLIAM WELLINGTON HOOPER, JR., using a facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce an individual who has not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense, to wit, Production of Child Pornography, in violation of Title 18, U.S.C. Section 2251. (In violation of Title 18, United States Code, Section 2422(b).).

(Indictment at 8-9.)

As charged, the counts differ in the fact that Count Three specifies a single date that falls within the date range charged in Count Four, and the fact that Count Three specifies Jane Doe 1 as the victim. Thus, based only on the language in the Indictment, a colorable argument exists that Count Four encompasses Count Three. Consequently, the Court must decide whether the counts differ in both law and in fact.

With respect to whether the counts differ in law, the Government argues that the use of an intermediary in Count Four renders it legally distinct from Count Three.[1] (Gov't Resp. at 9.) Defendant responds that no legal distinction exists, because the "gravamen of the offense is the persuasion/enticement/coercion of the minor." (Def.'s Reply at 4.) To determine a legal distinction, courts look to whether the offenses contain the same elements. *Dixon*, 509 U.S. at 696. "The same-elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* Here, the elements of the offense remain unchanged whether the defendant uses an intermediary or deals

---

[1] Section 2422(b) prohibits the use of an intermediary, as the statute "extend[s] to adult-to-adult communications that are designed to persuade the minor to commit the forbidden acts." *United States v. Clarke*, 842 F.3d 288, 298 (4th Cir. 2016). The Fourth Circuit has extended criminal liability to the use of an intermediary, because it has recognized that "[o]ne particularly effective way to persuade or entice a person to do something is to enlist the help of a trusted relative, friend, or associate." *Id.* at 297.

8

directly with the victim. Instead, the use of an intermediary speaks to the manner that the Defendant violated the law and, consequently, how the Government proves the second element — that the defendant knowingly persuaded or induced or enticed or coerced a minor to engage in illegal sexual activity — of that violation. Therefore, the two offenses do not differ legally. However, this does not save Defendant's Motion, because the two offenses differ factually.

When reviewing the proceedings as a whole, as the Court must, the evidence admitted at trial clearly demonstrates that Counts Three and Four concern different conduct that occurred on different dates. Count Three concerns illegal text messages that Defendant exchanged directly with Jane Doe 1 on May 5, 2019. The Government introduced these text messages as an exhibit (Gov't Ex. 2a), and Jane Doe 1 testified about the conversation. In the messages, Defendant tells Jane Doe 1 that they "are way off schedule on work," and that they need to get back to work as "soon as you can." (Gov't Ex. 2a at 1.) The "work" to which Defendant refers involved taking sexually explicit photographs for Defendant to sell to others. Indeed, Defendant described in graphic detail the type of photographs that they would take and the amount of money that he would pay for each type of photograph. When Jane Doe expressed reluctance, Defendant persuaded and enticed her with money. During trial, the Government tied the evidence of the May 5, 2019 conversation directly to Count Three. Likewise, in its Trial Brief, the Government specified that "Count 3 charges the defendant with coercing and enticing Jane Doe 1 through text messages on or about May 5, 2019." (Gov't Tr. Br. (ECF No. 73) at 28.) The text messages in Exhibit 2a and Jane Doe 1's testimony regarding them, without reference to any messages or conduct on any other date, support the conviction in Count Three for Coercion and Enticement.

Count Four, conversely, concerns different conversations that Defendant had with a different individual (Hutchens) on different dates. The Government introduced these text

9

messages and emails as exhibits (Gov't Exs. 1-2, 9-13), and Hutchens testified about these conversations. The conversations occurred throughout April and May of 2019. The messages clearly show Defendant using Hutchens to coerce and entice Jane Doe 1, Jane Doe 2 and other minor victims into posing in sexually explicit photographs that Defendant could sell. These conversations included detailed instructions and requests for taking sexually explicit pictures of Jane Doe 1 and Jane Doe 2. Indeed, on April 16, 2019, at Defendant's request, Hutchens took sexually explicit photographs of Jane Doe 1 and Jane Doe 2 and sent them to Defendant. (Gov't Ex. 1b at 1.) Then, on April 18, 2019, Defendant arranged for Hutchens to bring Jane Doe 1 to his boat for the purpose of producing child pornography. (Gov't Ex. 1b at 3-5.) These conversations continued into May, with Defendant requesting that Hutchens find additional minor females to use to create child pornography. (Gov't Ex. 2b.) These messages therefore differ in material ways from the messages that form the basis of Count Three.

    Not only do the conversations that make up Count Four differ in the time and recipient of them, the use of Hutchens as an intermediary also renders them factually distinct from the messages in Count Three. In Count Four, Defendant used a close relative of Jane Doe 1 and a trusted friend of Jane Doe 2 — who called Hutchens "mom" — to coerce them into producing child pornography. This differs from Defendant's method in Count Three of dealing directly with Jane Doe 1 to entice her to produce child pornography. Thus, the facts underlying Counts Three and Four differ as to the time and recipient of the messages, as well as the method of committing the crime. The conversations with Hutchens in April and May of 2019, without any reference to Defendants' conversations with Jane Doe 1 (or anyone else) on May 5, 2019, independently support the conviction for Coercion and Enticement as charged in Count Four.

The Fourth Circuit's recent decision in *Fall* supports this decision. There, the defendant challenged his convictions on a count of Possession of Child Pornography as multipicitous of three counts of Receiving Child Pornography, because the three images that formed the basis of the Receiving counts could have been stored on the laptop with hundreds of other images that formed the basis of the Possession count. 955 F.3d at 372. The Court determined that, in addition to the fact that the Possession charge stemmed from his possession of the images on August 4, 2016, and the Receipt charge stemmed from his receipt of images in January 2016, any possible overlap in the images did not support the inference that the Possession conviction was based on the same images as the Receipt convictions. *Id.* at 374.

Similarly, here, the conversations giving rise to Count Three occurred on May 5, 2019, and the conversations giving rise to Count Four occurred throughout April and May of 2019. Although some of Defendant's conversations that support Count Four may have occurred on May 5, 2019, "any overlap between [Counts Three and Four] is much too small to warrant a finding that the offense conduct charged" was the same. *Fall*, 955 F.3d at 374.

In sum, the Coercion conviction in Count Three was based on a conversation that did not form the basis of the Coercion conviction in Count Four. Accordingly, the factual differences in the evidence supporting the convictions under Counts Three and Four defeat Defendant's multiplicity claim, and the Double Jeopardy Clause does not bar his conviction for both counts.

**B.  Sufficiency of the Evidence**

Defendant further argues that the Court must overturn the convictions on all counts, because insufficient evidence existed to establish Defendant's guilt. (Def.'s Mot. at 11.) Specifically, Defendant claims that only Hutchens and Jane Doe 1 testified that Defendant sent the text messages and emails at issue, and neither one gave a believable version of the events.

11

(Def.'s Mot at 11-13.) In contrast, Defendant's testimony demonstrated his innocence. (Def.'s Mot. at 11-13.) The Government responds that the Court cannot override the jury's credibility determinations and, in any event, the evidence at trial established Defendant's guilt beyond a reasonable doubt. (Gov't Resp. at 11.)

Defendant cannot carry his heavy burden that Rule 29 requires of him. In assessing a Rule 29 motion, the Court remains "cognizant that it is the jury's province to weigh the credibility of witnesses, and to resolve any conflicts in the evidence." *United States v. Dinkins*, 691 F.3d 358, 387 (4th Cir. 2012). In fact, the Court is "not entitled to weigh the evidence or to assess the credibility of witnesses, but must assume that the jury resolved all contradictions . . . in favor of the Government." *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998). But, Defendant's motion rests entirely on attacking the credibility determinations made by the jury. He sums up his argument in his reply brief: "The story woven by Hutchens is too fantastical to be believed and Hooper has denied any involvement." (Def.'s Reply at 5.) After hearing Defendant's testimony, the jury could have believed his version of the events. Likewise, after hearing the testimony of the Government's witnesses and seeing the evidence adduced, the jury could have believed the Government's version of events. The jury chose to accept the Government's facts and convicted Defendant. The Court has no role in making the credibility determination that would require it to overturn that choice.

Nor would the evidence compel the Court to find that insufficient evidence supported the jury verdict even if it could reweigh the credibility of the witnesses. With respect to each count, the Government introduced evidence that supported the jury's verdict. With respect to Count One, Conspiracy to Produce Child Pornography, the Government needed to prove the following elements to establish a conspiracy: (1) an unlawful agreement between two or more people to

commit a crime, and (2) that the defendant knowingly and willingly participated in that conspiratorial endeavor. *Compare United States v. Vinson*, 852 F.3d 333, 352 (4th Cir. 2017) (listing elements of § 371 conspiracy along with overt act); *with Whitfield v. United States*, 543 U.S. 209, 213-14 (2005) (stating that proof of an overt act is not necessary when Congress omits such a requirement in the statute), *and* 18 U.S.C. § 2251(e) (imposing penalties on "[a]ny individual who violates, or attempts or conspires to violate" without requiring proof of overt act). In support of these elements, the Government introduced Defendant's and Hutchens' ample statements in text messages and emails showing an agreement to produce child pornography and willing participation by Defendant in that agreement. Hutchens testified as to that agreement, and the jury believed her testimony. This evidence supports a conviction on Count One.

For Count Two, Production of Child Pornography, the Government needed to adduce evidence to prove three essential elements: "(1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce." *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009). In proving these elements, the Government introduced messages sent by Defendant showing that he induced and coerced Jane Doe 1 and others to take sexually explicit photographs. Jane Doe 1 and Hutchens also testified as to Defendant's production of child pornography. Further testimony revealed that Jane Doe 1 was fifteen years old at the time and that the phone used to produce the pornography came from China, thus satisfying the age and commerce requirements. Therefore, the Government introduced evidence sufficient to support a conviction on Count Two.

13

With respect to Counts Three and Four, the Coercion Counts discussed above, the offense consists of four elements: "(1) use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) a person who is younger than eighteen; (4) to engage in illegal sexual activity." *United States v. Fugit*, 703 F.3d 248, 254 (4th Cir. 2012). As discussed above, the Government introduced considerable evidence of Defendant's efforts to induce and entice Jane Doe 1 and other minor victims to produce child pornography. This included a significant number of text messages and emails sent directly to the victims as well as those sent to Hutchens as an intermediary. The testimony of S.M. and G.T. corroborated the identity of Defendant as the sender of those messages. Additionally, Jane Doe 1 and Jane Doe 2 testified that they were fifteen years old at the time, satisfying the age element. Lastly, Agent Brumbelow testified that the phones at issue came from China, satisfying the commerce requirement. Consequently, sufficient evidence supports the jury verdict on Counts Three and Four.

Contrary to Defendant's assertion that insufficient evidence established Defendant's guilt, the Court finds that overwhelming evidence established the Defendant's guilt. In addition to the heavy burden that Rule 29 imposes on defendants, Defendant faces a considerable weight of evidence supporting his conviction. The Court refuses to overturn the will of the jury, especially when all of the credible evidence supports its decision. As a result, Defendant's convictions will stand.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion Pursuant to Rule 29 of the Federal Rules of Criminal Procedure (ECF No. 109).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: December 30, 2020